545 So.2d 651 (1989)
STATE of Louisiana
v.
Darrell WILLIAMS.
No. 89-KA-31.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1989.
*652 Richard Tompson, Martha A. Sassone, Indigent Defender Bd. Twenty-Fourth Judicial Dist., Gretna, for defendant-appellant.
John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Terry M. Boudreaux, Asst. Dist. Attys., Office of the Dist. Atty., Twenty-Fourth Judicial Dist., Gretna, for plaintiff-appellee.
Before CHEHARDY, C.J., and GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
This appeal arises out of defendant Darrell Williams' conviction of forcible rape. In the initial appeal, we affirmed the conviction and sentence but remanded the matter for an evidentiary hearing to determine whether the State used its peremptory challenges to exclude blacks from the jury solely on the basis of race. The Louisiana Supreme Court granted writs in part, affirming our decision as amended, and remanded the case to the trial court for an evidentiary hearing. See State v. Williams, 516 So.2d 150 (La.App. 5th Cir. 1987), writ granted in part, 524 So.2d 746 (La.1988). Thereafter, the trial court held the hearing and, on October 7, 1988, found that the jury selection process "was not done in a discriminatory fashion." We affirm.
ISSUE
The sole issue presented is whether the State used its peremptory challenges to exclude prospective jurors soley on the basis of race during the voir dire proceedings.
FACTS
During the trial leading to the conviction of Williams, the record shows the State only used four of its 12 peremptory challenges, excluding one white person, Donna Jones, and three black persons, Bernard Foley, David Smothers, and Jacquelyn Riggins. The defense objected to "any systematic exclusion of blacks simply because they're black." The court allowed the State to write down its reasons for peremptorily challenging said jurors and ordered that this written statement be sealed and placed in the record.
The statement reads as follows:
*653 During the evidentiary hearing, the State noted that this Court found in Williams, supra, at 153 that the defendant made a prima facie showing of facts and circumstances raising an inference that the prosecutor used peremptory exceptions to exclude veniremen from the petit jury on account of their race, thereby shifting the burden to the State to give race-neutral reasons for the peremptory challenges used to exclude blacks.
We note on direct examination, Assistant District Attorney Ann Lambert testified that, during the Williams trial, she challenged Bernard Foley peremptorily because he had been arrested. She further stated that his rap sheet, introduced at the evidentiary hearing, shows that he pled guilty to violating three Gretna ordinances, including disturbing the peace. On cross-examination, Lambert stated that arrests concern her because she feels they make jurors "anti-system, anti-police, [and] anti-prosecutor." We further note none of the seven former jurors who testified at the evidentiary hearing had ever been arrested, but six of them admitted they had received traffic citations. Five of these six were *654 white. In this vein, Lambert, on cross-examination, stated that traffic tickets do not make people anti-police and that "traffic offenses are not criminal in that sense, in my opinion," because persons are not arrested for traffic offenses but are often arrested for disturbing the peace. Although she admitted on cross that the Code of Criminal Procedure provides that a misdemeanor summons can be substituted for a misdemeanor arrest, she stated that she doesn't want a juror who "has been arrested or brushes with the law in any way," whether by an arrest or summons. She also stated on cross-examination that a rap sheet usually indicates whether a summons was issued, and that she believes she would have noted it had one been issued. However, she admitted she could not say whether the rap sheet indicated that a summons was issued or not issued. Finally, Lambert stated on direct examination that race played no part in her decision to challenge Bernard Foley.
We see Lambert testified she challenged David Smothers peremptorily because he was wearing sunglasses. She said jurors who wear "sunglasses, hats, etc., express a disrespect for the Court." She went on to state that she has difficulty making eye contact with persons wearing sunglasses, and, in her written reasons for making the challenge, she also noted that Smothers would not look at her and that he was close in age to the defendant. Lambert concluded that race played no part in her decision to challenge Smothers. Defendant claims Nancy Burnonna, a white female, wore "tinted glasses" when selected to serve on the jury.
Lambert testified that she peremptorily challenged Riggins because Riggins was looking over at the defendant and his mother in a way that indicated she might be overly sympathetic towards the defendant. However, Lambert admitted on cross-examination that she was confused by four of the words in State's Exhibit 1 (this is the sealed statement as per the trial judge's direction) and said she did not think she knew the ages of Riggins' children and did not know why she wrote that Riggins' children were approximately the same age as defendant. She concluded by stating that race played no part in her decision to challenge Riggins. Defendant complains that Lambert's challenge of Riggins is inconsistent with her failure to challenge Roseanne Keefer, a white woman who stated at the evidentiary hearing that her children were close in age to the defendant. The record shows neither Riggins nor Keefer mentioned the age of their children during the voir dire proceedings.
LAW
Facing this issue in State v. Thompson, 516 So.2d 349, 351 (La.1987), cert. denied, ___ U.S. ___, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), the Louisiana Supreme Court considered all relevant circumstances, including: (1) whether defendant was black, (2) whether the State exercised all of its peremptory challenges against blacks, (3) the number of blacks who served on the jury, (4) whether black jurors were selected before the State exhausted its peremptory exceptions, (5) whether prospective black jurors accepted by the State before it had exhausted its peremptory exceptions were excused by defendant, (6) whether the prosecutor's questions or statements during voir dire support an inference of discriminatory purpose, and (7) whether the prosecutor came forward with a race-neutral reason for challenging each juror.
Additionally, our brothers in the First Circuit have aided us by stating in State v. Carter, 522 So.2d 1100, 1102-03 (La.App. 1st Cir.1988) that the court looked at whether the record indicates the prosecutor's acceptance of the 12 jurors who served was inconsistent or contrary to any reasons he (the prosecutor) gave for peremptorily challenging black veniremen.
ANALYSIS
The record shows Williams was black, the State exercised three of its four peremptory challenges against blacks, two blacks served on the jury of 12,[1] and these *655 two blacks were accepted before the State exhausted its peremptory exceptions. It appears the defendant did not use any peremptory exceptions to challenge blacks who had been accepted by the State. None of the prosecutor's questions or statements during voir dire support an inference of discriminatory purpose, and the prosecution did come forward with a race-neutral reason for challenging each juror.
Moreover, the record does not indicate that the State's acceptance of the white jurors who had received traffic citations, but had never been arrested, was contrary to its written and stated reasons for excluding Foley because Foley's rap sheet indicates he was arrested. Prior arrests have been accepted as a race-neutral reason to challenge a prospective juror. See United States v. Williams, 822 F.2d 512, 515 (5th Cir.1987); State v. Thompson, supra, at 354. See also Justice Dennis' concurring opinion (in which he was joined by Justices Tate and Calogero) in State v. Eames, 365 So.2d 1361, 1370-71 (La.1978). Additionally, the State's acceptance of Carol Porter, a black who served on the jury despite the fact that she had received traffic citations, indicates it genuinely considered traffic citations to be of a different nature than arrest, and did not attempt to exclude Carol Porter from the jury because of her traffic citations.
Finally, the record does not indicate that the State's acceptance of Nancy Burnonna, a white female, was contrary to its stated and written reasons for excluding Smothers because Smothers was wearing sunglasses in court, and Burnonna testified at the evidentiary hearing that her glasses only darken when she wears them outside. Perceived hostility is a neutral reason under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), see United States v. Forbes, 816 F.2d 1006, 1010-11 (5th Cir.1987), and United States v. Mathews, 803 F.2d 325, 331 (7th Cir.1986), rev'd on other grounds, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), as is perceived lack of interest and unresponsiveness, see State v. Gilmore, 522 So.2d 658, 661 (La. App. 5th Cir.1988), and State v. Manuel, 517 So.2d 374, 376 (La.App. 5th Cir.1987).
Lastly, the record does not indicate that the State's acceptance of Roseanne Keefer, a white female, was contrary to its stated and written reasons for excluding Riggins. Despite the prosecutor's confusion regarding her written reasons, she testified at the evidentiary hearing that she observed Riggins gazing at the defendant and his mother in a way that indicated Riggins might be overly sympathetic towards the defendant. This challenge is neutral under Batson. See State v. Thompson, supra, at 354.
The reasons given for a peremptory challenge under Batson, supra, 106 S.Ct. at 1723, need not rise to the level of a challenge for cause. The trial court concluded that the selection process was "not done in a discriminatory fashion." We agree. A trial judge has great discretion in making determinations of this nature, and his decision must not be overturned unless it is manifestly erroneous. See Batson, supra, at 1724, n. 21. Accordingly, we find the trial court's conclusions are amply supported.
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] In Williams, supra, at 151, this Court erroneously stated that one black served on the jury that convicted Williams.