561 So.2d 922 (1990)
STATE of Louisiana, Appellee,
v.
Terrance L. JOHNSON, Appellant.
No. 21450-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
Carl Henry Franklin, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., A. M. Stroud, III & Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In response to a multiple count indictment, a jury found defendant, Terrance L. Johnson, guilty of numerous offenses, for which the district court imposed terms of imprisonment at hard labor, as follows: Two aggravated rapes, two life sentences; aggravated kidnapping, a life sentence; two armed robberies, two 15-year terms; attempted manslaughter, eight years; two aggravated crimes against nature, two 5-year terms. All of the sentences, except that for attempted manslaughter, provided for service without benefit of probation, parole or suspension of sentence. In each instance of two convictions of the same crime, the two sentences were ordered to run concurrently with each other but not with any other sentence. In all other respects, the various sentences were ordered to run consecutively.
*923 Defendant now appeals, reserving three assignments of error. For the reasons hereinafter expressed, we affirm all the convictions and sentences.

FACTS
On August 27, 1988, defendant went on a crime spree beginning at 3:00 a.m. when he and three other young men robbed Herman Moore and Ora Todd at gunpoint in the Mooretown area of Shreveport. Thereafter, at approximately 6:00 a.m., defendant abducted a woman at gunpoint from the Chevron gas station on Monkhouse Drive. She was able to escape, however, after defendant parked her car and exited to talk to another man in a blue Ford Tempo. As the woman drove away, defendant fired at her twice, with one bullet grazing her elbow.
At 6:15 a.m., defendant kidnapped another individual, Ms. Jane Doe, from the intersection of the Innerloop and Jewella Avenue, where she had stopped for a red light. This second victim found her lane of travel blocked by a blue Ford Tempo from which defendant emerged waving a gun. He then approached Ms. Doe's vehicle, pointed the gun at her, and demanded that she move to the passenger seat. When another motorist, Mr. Stahl, observed the abduction and attempted to aid the victim, defendant shot at him. After Mr. Stahl finally abandoned his pursuit to call authorities, defendant took Ms. Doe to a wooded area off Walker Road, where he twice raped her and forced her to perform oral sex on two occasions. Leaving the victim bound and gagged in the woods, defendant took her high school ring, $3 in cash, and a Sears credit card. Within a few hours, defendant and his friends used the credit card to make various purchases.
The present trial only involved offenses committed against Ms. Doe and Mr. Stahl.

DISCUSSION

Assignment of Error No. 1
In the first assignment of error, defendant contends that the court imposed excessive sentences consisting of three life terms, in addition to the other terms of imprisonment.
A two-step process is utilized to evaluate an assertion of excessiveness of sentence. First, the record must show the lower court observed the criteria set forth in LSA-C. Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). Articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence, remand is unnecessary even where there has not been full compliance with the article. State v. Lanclos, 419 So.2d 475 (La.1982). Important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). The present record clearly discloses consideration of the pertinent factors.
At sentencing, the trial court reviewed defendant's criminal history as shown by the pre-sentence investigation report (PSI). In 1985, he was sentenced to one year in the parish jail for attempted felony theft. Although that sentence was suspended for two years, defendant's attendant probation was subsequently revoked for failure to comply with the probationary terms and his conviction of a new felony offense. After an August 1985 arrest on four counts of felony theft, he pled guilty to one count and was sentenced to one year at hard labor, with credit for time served. In 1986, defendant was arrested for attempted second degree murder, later reduced to aggravated battery, and for aggravated criminal damage to property. Upon the battery charge being dismissed, he pled guilty to the other offense and received a sentence of one year at hard labor, with credit for *924 time served. At the time of the present sentencing, defendant also had pending a charge of possession of cocaine with intent to distribute.
Based on the PSI and trial testimony, the court concluded that defendant had a character or attitude problem causing him to treat people inhumanly. There was no showing, according to the judge, that imprisonment would entail excessive hardship for defendant or his dependents. The only mitigating factor defendant asked the court to consider was his age, that being 21 years at the time of sentencing.
In the second step of our review, we must also determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). In determining whether a sentence is grossly disproportionate, the crime and punishment are considered in light of the harm caused society. See State v. Barberousse, 480 So.2d 273 (La.1985). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of that discretion. State v. Square, 433 So.2d 104 (La.1983).
His statement in the PSI indicated defendant drove around Mooretown on the night involved until he picked up a friend who asked if he wanted to go rob someone. Defendant replied, "Yes I do." After an unsuccessful attempt to rob the first woman, he abducted Ms. Doe at gunpoint, and fired at an individual attempting to aid her. The trial judge was unable to find that defendant had any remorse for his crimes, despite the resulting serious harm and danger to the victims and the public.
Of course, our law provides mandatory life sentences at hard labor, without benefit of probation, parole or suspension of sentence, for aggravated rape and aggravated kidnapping. LSA-R.S. 14:42, 14:44.
A conviction of armed robbery carries a sentence of up to 99 years at hard labor without benefit of probation, parole or suspension of sentence. LSA-R.S. 14:64. The court sentenced defendant to serve 15 years on each charge. LSA-R.S. 14:31 allows imposition of up to 21 years for manslaughter. Defendant was convicted of attempted manslaughter, making his ultimate exposure ten and one-half years, LSA-R.S. 14:27 D(3), and then sentenced to eight years. Convicted on two counts of aggravated crime against nature, a single offense of which carries a maximum penalty of 15 years at hard labor without benefit of probation, parole or suspension of sentence, LSA-R.S. 14:89.1, defendant received a five-year sentence on each count. As stated earlier, in each case where defendant was found guilty of two counts of the same crime, the two sentences were ordered to run concurrently with each other.
Considering defendant's prior felony convictions, the obvious seriousness of the offenses, and the mandatory sentences provided by law, it clearly cannot be said that the trial court abused its discretion in sentencing defendant.

Assignment of Error No. 2
In this assignment of error, defendant urges this court to review the entire record for errors patent. See LSA-C.Cr.P. Art. 920(2). Finding none, this assignment of error is meritless.

Assignment of Error No. 3
In defendant's final assignment of error, he contends the trial court erred in denying his motion to quash the jury venire and petit jury based upon his assertion that the prosecutor prejudicially and systematically used peremptory challenges to exclude the only two black veniremembers, Mr. Nolley and Mrs. Anderson, from the petit jury panel. The assignment essentially poses a Batson claim. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
In State v. Williams, 524 So.2d 746 (La. 1988), appeal after remand, 545 So.2d 651 (La.App. 5th Cir.1989), the Louisiana Supreme Court decided that, in order to preserve *925 a Batson complaint, the defense must make an objection before the entire jury panel is sworn. Such a conclusion is consistent with LSA-C.Cr.P. Art. 841, which requires that an error or irregularity must be objected to at the time of occurrence. The purpose of that rule is to accord the trial judge an opportunity to remedy the error and avoid possible reversal of a conviction. State v. White, 535 So.2d 929 (La.App. 2d Cir.1988), writ denied, 537 So.2d 1161 (La.1989); State v. Chavis, 542 So.2d 181 (La.App. 3rd Cir.1989).
The motion to quash the jury venire and jury was not raised until April 5, 1989, after jury selection had been completed and opening arguments made on April 4. By failing to timely complain, defendant thus waived the objection asserted, and it was not error for the trial court to deny the motion.
In any event, notwithstanding that untimeliness, the trial court allowed counsel to argue the motion's merits as viewed under the rationale of Batson v. Kentucky, supra.
A defendant, who claims he has been denied equal protection by the prosecutor's prejudicial usage of peremptory challenges to exclude members of his race from the petit jury, is required by Batson to establish a prima facie case of purposeful discrimination. To do this, he must first show that he is a member of a cognizable racial group and that the prosecutor has utilized peremptory challenges to reject members of that group. A defendant may rely on the fact that peremptory challenges allow those so predisposed to exercise such challenges to discriminate. However, the defendant must show that these facts and other pertinent circumstances raise an inference that the prosecutor used peremptory challenges to exclude veniremembers on the basis of race.
Once the defendant makes this showing, the burden shifts to the state to come forward with a neutral explanation for challenging the jurors. While the explanation need not rise to the level of a challenge for cause, State v. Young, 551 So.2d 695 (La. App. 1st Cir.1989); State v. Williams, supra, a prosecutor may not meet his burden by merely stating that it was his assumption or intuitive judgment that the excused jurors would be partial to defendant because of their shared race, State v. Jackson, 548 So.2d 29 (La.App. 5th Cir.1989).
Race neutral reasons for challenging a prospective juror have included prior arrests, see State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, ___ U.S. ___, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), reh'g denied, ___ U.S. ___, 109 S.Ct. 517, 102 L.Ed.2d 551 (1988); U.S. v. Williams, 822 F.2d 512 (5th Cir.1987), a perceived lack of interest or unresponsiveness, see State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988); State v. Willis, 552 So.2d 39 (La.App. 3rd Cir.1989); State v. Gilmore, 522 So.2d 658 (La.App. 5th Cir.1988); State v. Manuel, 517 So.2d 374 (La.App. 5th Cir.1987), previous acquaintance with the prosecutor or defense counsel, or connection with other criminal proceedings, see State v. Mims, 524 So.2d 526 (La.App. 2d Cir.1988), writ denied, 531 So.2d 267 (La.1988); U.S. v. Williams, supra; U.S. v. Forbes, 816 F.2d 1006 (5th Cir.1987); State v. Willis, supra; State v. Brown, 507 So.2d 304 (La.App. 3rd Cir.1987), perceived hostility, see State v. Mims, supra; U.S. v. Moreno, 878 F.2d 817 (5th Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989); U.S. v. Forbes, supra, observed similarities to defendant or propensity to identify with defendant, see State v. Wiley, supra; U.S. v. Moreno, supra, and such factors as age, employment, education, marital status and length of residence in the community, see U.S. v. Moreno, supra; U.S. v. Romero-Reyna, 867 F.2d 834 (5th Cir.1989), appeal after remand, 889 F.2d 559 (5th Cir.1989); U.S. v. Terrazas-Carrasco, 861 F.2d 93 (5th Cir.1988); U.S. v. Lance, 853 F.2d 1177 (5th Cir.1988); State v. Willis, supra.
The record establishes the two jurors in question, Mrs. Anderson and Mr. Nolley, as well as the defendant, to be black.
In response to the defense position, the prosecutor explained that he had excused Mr. Nolley because the venireman had a son who had been convicted of manslaughter, *926 and Mr. Nolley himself had been convicted of driving while intoxicated. Upon learning of that latter conviction, the prosecutor questioned the prospective juror as follows:
MR. STROUD: Mr. Nolley, I wanted to ask you a few questions about some things that I thought would be better to ask outside the other jurors' presence. You've been convicted of DWI?
MR. NOLLEY: Right.
MR. STROUD: How long ago was that?
MR. NOLLEY: 1985.
MR. STROUD: Do you think you were treated fairly?
MR. NOLLEY: I got my doubts about that. I didn't think too much about it.
MR. STROUD: So you have some problem with the way you were treated?
MR. NOLLEY: No, sir, I didn't have no problems, but still I was under stress.
MR. STROUD: Did you plead guilty?
MR. NOLLEY: Yes.
MR. STROUD: So you don't really feel you were intoxicated?
MR. NOLLEY: I know I wasn't.
Mr. Nolley's denial of intoxication even after the guilty plea indicated a lack of respect for the criminal justice system, according to the prosecutor, thereby causing the exercise of a peremptory challenge.
Mrs. Anderson was excused, explained the prosecutor, because she indicated that she knew the defense attorney's family, that defendant's face looked familiar, and that she probably had met defendant at a high school function since he attended where her husband taught. Mrs. Anderson also stated that she had paid $300 to attend an activity scheduled during the week of trial, and thought she would have difficulty concentrating on the case.
Defense counsel failed to offer any rebuttal to the prosecutor's explanations, which were plausible, supported by the record, and racially neutral. The trial court rejected defendant's contentions that purposeful discrimination had been established with reference to the jury selection. Such a conclusion by the trial judge merits great deference. Batson, supra, 106 S.Ct. at 1724, n. 21; U.S. v. Romero-Reyna, supra; Thomas v. Moore, 866 F.2d 803 (5th Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). Accordingly, it was not error to deny the motion at issue in this assignment.

CONCLUSION
For the reasons assigned, defendant's convictions and sentences are affirmed.
AFFIRMED.