578 So.2d 528 (1991)
STATE of Louisiana
v.
Vinson G. POTTER.
No. 88-KA-2090.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1991.
On Rehearing April 4, 1991.
Writ Granted June 28, 1991.
*529 Harry F. Connick, Dist. Atty., Pam Moran, Asst. Dist. Atty., New Orleans, for State.
Raymond A. McGuire, New Orleans, for defendant/appellant.
Before BARRY, WILLIAMS, and PLOTKIN, JJ.
PLOTKIN, Judge.
The sole issue considered in this criminal appeal is whether a defendant tried prior to the United States Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) is entitled to a hearing to determine whether the prosecution improperly discriminated against blacks by exercising its peremptory challenges to exclude them from the jury, despite defense counsel's failure to object at trial. We have decided that under the facts of this case, he is. Therefore, we remand the case to the trial court for a Batson hearing.

Facts
Defendant Vinson G. Potter was found guilty of second degree murder in the June 13, 1985 shooting death of Raymond Lewis, one of Potter's co-workers at the main branch of the United States Post Office. Potter admitted shooting Lewis, but claimed that he was acting in self-defense at the time. According to the undisputed contentions in the appellant's brief, verified by documents attached to the brief, the verdict was returned by a jury of nine whites and three blacks on April 15, 1986; the vote was eleven to one with the sole "not guilty" vote coming from one of the black members of the jury. Eleven blacks were peremptorily challenged by the State during voir dire; defense counsel failed to object to the State's use of its peremptory challenges to exclude blacks. Potter was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.
Defense trial counsel made an oral motion from new trial on May 15, 1986, then filed a written motion for new trial on June 3, 1986. The State's improper use of its peremptory challenges to exclude blacks from the jury was raised in the written motion. That motion, as well as another motion for new trial filed by appeal counsel in March of 1988, was denied by the trial court.
Potter seeks review of his conviction, primarily on the basis of his claim that his Fourteenth Amendment right to equal protection was violated by the State's use of peremptory challenges to exclude members of his race from the jury. Additionally, he asserts an ineffective assistance of counsel claim based on numerous alleged acts and omissions by trial counsel, including the failure to comtemporaneously object to the State's use of its peremptory challenges, as well as an assignment of error based on alleged prejudicial comments in the State's closing argument. Because we have concluded that Potter is entitled to a hearing to determine whether the State's use of its peremptory challenges was improper, we pretermit consideration of the other issues. Additionally, we note that an ineffective assistance of counsel issue is usually handled by post-conviction relief, which allows the trial court to hold an evidentiary hearing. Nevertheless, we will discuss the ineffective assistance of counsel issue as it relates to the failure to contemporaneously object.

Exclusion of Blacks from Jury
At the time the defendant was tried for second degree murder, the law on exclusion of jurors based on race was embodied in the rules enunciated by the United States Supreme Court in Swaim v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In Swaim, the court recognized that the right to equal protection under the Fourteenth Amendment of the United States Constitution is violated by "a state's purposeful or deliberate denial to Negroes *530 on account of race of participation as jurors in the administration of justice." Id. at 203-04, 85 S.Ct. at 826-27. However, before a defendant could benefit from that rule, he was required to show a systematic exclusion of jurors based on race which occurred in a number of cases. Id. at 227, 85 S.Ct. at 839. The result was that the defendant had a heavy evidentiary burden before he could establish a prima facie case of racial discrimination.
In Batson, decided by the United States Supreme Court on April 30, 1986, 15 days after the verdict in the instant case, the defendant's evidentiary burden in a case involving discriminatory exclusion of jurors based on race was changed dramatically. In Batson, the court stated as follows:
[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
Id. 476 U.S. at 96, 106 S.Ct. at 1723. (Citations omitted.) The court further noted that "a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." Id. at 97, 106 S.Ct. at 1723.
Once the defendant meets his burden of proving a prima facie case of purposeful discrimination under the new standard enunciated in Batson, the burden shifts immediately to the prosecution to present "a neutral explanation" for challenging the jurors, although the explanation "need not rise to the level justifying exercise of a challenge for cause." Id. The prosecution is not allowed to rely on "the assumption or his intuitive judgmentthat [the jurors] would be partial to the defendant because of their shared race." Id.
The new standard for determining whether jurors were improperly excluded on the basis of race enunciated in Batson, "applies retroactively to all cases, state or federal, pending on direct review or not yet final" at the time it was decided. Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). Thus, the Batson rule, which resulted in a substantive change in the law, applies to the instant case.
In State v. Collier, 553 So.2d 815 (La. 1989), the Louisiana Supreme Court, citing the Batson decision at length, found that the defense had met its burden of establishing a prima facie case of intentional discrimination by showing that the State had exercised eight of its peremptory challenges, all eight of which were used to exclude black persons from the jury, despite the fact that two of the jurors accepted were black. The court found that "the mere presence of two black persons on the jury did not necessarily defeat an inference of discrimination." Id. at 819.
This court has considered the Batson issue only oncein State v. Cannon, 572 So.2d 740 (La.App. 4th Cir.1990), in which a trial court decision denying a Batson challenge was affirmed. However, that decision is both legally and factually distinguishable from the instant case, primarily on the basis of the fact that the trial judge actually considered the issue and made a decision that the defendant's right to equal protection was not violated by the State's actions in challenging jurors of his own race. Additionally, the Cannon decision strongly emphasizes the fact that 74 per *531 cent of the jury venire was black. The record in the instant case indicates that the jury venire was roughly 50-50 white and black. Therefore, Cannon does not impact this decision.
In the instant case, the record reveals that the State exercised eleven of its peremptory challenges and that all eleven were used to exclude potential jurors who were black. Thus, the defendant has established a prima facie case under the decisions in Batson and Collier, despite the fact three blacks were accepted on the jury.
Contemporaneous Objection Rule
Nevertheless, the State argues that the defendant in the instant case is not entitled to the benefits of the Batson decision because defense counsel failed to contemporaneously object to the State's exercise of its peremptory challenges.
La. C.Cr.P. art. 841(A), the "contemporaneous objection rule," provides, in pertinent part, that "an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The rule has two purposes:
(1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem, and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection.
State v. Thomas, 427 So.2d 428, 433 (La. 1982); State v. Falls, 544 So.2d 27, 28 (La.App. 4th Cir.1989).
In State v. Williams, 524 So.2d 746 (La. 1988), the Louisiana Supreme Court, citing Batson, held that the defense must make an objection before the entire jury panel is sworn in order to preserve the complaint that the State had improperly excluded jurors on the basis of race. However, in Williams, the defendant was tried on November 6 and 7, 1986, some seven months after the United States Supreme Court's decision in Batson was released on April 30, 1986. Thus, the Williams case is factually distinguishable from the case at hand.
Only the second circuit has considered the exact issue presented to this court in the instant appeal. In State v. Evans, 506 So.2d 1283 (La.App. 2d Cir.1987), the defendant was tried in March of 1986, a month prior to the Batson decision. He appealed his conviction, complaining that the State had used four peremptory challenges to exclude blacks from the jury, which was all white; no contemporaneous objection had been made. The appeals court considered whether the defense counsel's failure to object should be excused under the circumstances of the case and concluded that the failure was not excusable because Batson did not change the law, but only changed the evidentiary standard for proving a violation of the law. Id. at 1287.
We disagree with the second circuit's narrow analysis in Evans. First, we believe that Batson created a new right where none previously existed. Second, the jurisprudence in this state recognizes certain limited exceptions to the contemporaneous objection rule, especially in cases involving prejudice to the defendant's due process rights or cases where a fundamental error "substantially undermines the reliability of the fact-finding process." State v. Arvie, 505 So.2d 44, 47 (La.1987); State v. Alexander, 430 So.2d 621, 623 (La.1983). See also State v. Hayes, 364 So.2d 923 (La.1978) and the cases cited therein. We believe that the instant case falls under both of the traditionally-recognized exceptions to the contemporaneous objection rule, as well as several other exceptions established by the jurisprudence cited below.
The Louisiana Supreme Court has considered an argument concerning the admission of hearsay without a contemporaneous defense objection when coupled with an allegation of ineffective assistance of counsel, and concluded that a contemporaneous objection is not necessary under those circumstances. State v. Ratcliff, 416 So.2d 528 (La.1982). The instant case, with Potter's claim that there was purposeful discrimination by the prosecutor in selecting the jury coupled with his claim that he was denied effective assistance of counsel, provides a far more compelling reason for this *532 court to consider his claim absent a contemporaneous objection.
In State v. Ervin, 340 So.2d 1379, 1381 (La.1976), the Louisiana Supreme Court found that a contemporaneous request for a mistrial was unnecessary to preserve the error for appeal when the prosecution referred to defendant's prior incarceration over defense objection because it would have been a "vain and useless act." See State v. Mullins, 537 So.2d 386 (La.App. 4th Cir.1988). Similarly, at the time of trial in the instant case, a contemporaneous objection to the State's use of peremptory challenges to exclude blacks from the jury would have been a "vain and useless" act since the defendant was required under Swaim to prove systematic exclusion of jurors based on race over a number of cases.
Strict application of the rule under the circumstances presented by this case would not serve the first purpose for the contemporaneous objection rulegiving the trial judge the opportunity to cure the problem. Since the evidentiary standard under Swaim was so different from that established by Batson, at the time of trial in the instant case any objection to the State's use of its peremptory challenges to exclude blacks in an individual case would have automatically been overruled.
Equity dictates that a defendant should not be punished for his failure to object pursuant to the old standard enunciated in Swaim, when there was no justification for the objection until the adoption of the new standard in Batson. Potter raised his claim as soon as possible after the announcement of the new standard in his motions for new trial, unlike the defendant in Evans, who did not raise the claim in the trial court, but only on appeal. Fundamental fairness and the above-cited jurisprudence require that this court review Potter's claim.

Conclusion
As noted above, on the face of the record, the defendant in this case has established a prima facie case of racial discrimination in the State's exercise of its peremptory challenges. Since we have determined that the failure to contemporaneously object does not bar our consideration of the issue under the circumstances of this case, the defendant is entitled to a Batson hearing.
The case is therefore remanded to the trial court for a Batson hearing to be held as soon as possible. In the event the court concludes that a Batson violation occurred, the defendant is entitled to a new trial. In the event the State is unable to sustain its burden of proof, a new trial shall be granted. Should the court conclude that a Batson violation did not occur, a complete record of this case, including the transcript and pleadings, is to be forwarded to this court within 60 days of the hearing for further review of the Batson issue, as well as other remaining undecided issues. In that event, the parties shall be granted a 30-day supplemental briefing period on the Batson question.
REMANDED FOR BATSON HEARING.
BARRY, Judge, joins the majority with reasons.
The majority correctly distinguishes this case and State v. Cannon, [*] 572 So.2d 740 (La.App. 4th Cir.1990). Cannon interpreted Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) to require a defendant to carry a three part burden. Cannon required that a defendant satisfy a third part, i.e., "to produce any relevant circumstances to raise an inference of misuse of peremptory challenges by the state." Cannon, at 742.
Batson mandates a defendant to first show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove potential jurors of that race. Secondly, the defendant is entitled to rely on the fact that a peremptory challenge constitutes a selection practice that permits those who wish to discriminate to discriminate. The Batson court then stated:

*533 Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of race. This combination of factors in the impaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
476 U.S. at 96, 106 S.Ct. at 1723.
I fail to see how the above-quoted language sets out a "third part" in order for a defendant to establish a prima facie case of discrimination. The Batson court elaborated on what constituted "other relevant circumstances" by stating:
For example, a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.
Id. at 97, 106 S.Ct. at 1723.
Cannon's requirement that a defendant produce "other relevant circumstances" was based on a faulty interpretation of Batson. However, the result in Cannon was correct.
This case does not discuss the Batson "other relevant circumstances." Such a discussion is not necessary when the record does not contain a defense objection to the alleged racial discrimination or detailed information on how the State's peremptory challenges were used.

ON APPLICATION FOR REHEARING
PLOTKIN, Judge.
On application of the State, we granted rehearing to reconsider our original decision that the arguments presented in the defendant's brief, considered in conjunction with attachments to the brief, were sufficient to establish a prima facie case of racial discrimination under the Batson decision. We now amend our original decision to withdraw that pronouncement and order the trial court to hold a hearing and afford the defendant an opportunity to present evidence into the record to establish his Batson claim. Should the defendant successfully establish a prima facie case, the burden should then shift to the State to present a "neutral explanation" for peremptorily challenging the jurors. In all other respects, our original decision is affirmed.
AMENDED AND AFFIRMED.
BARRY, J., would grant rehearing on the merits.
NOTES
[*] The writer was a member of the Cannon panel.