613 So.2d 1047 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Darryl MILES, Defendant-Appellant.
No. CR 92-674.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1993.
*1048 Louis Vogt, Vidalia, for defendant-appellant.
John Johnson, Dist. Atty., Vidalia, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and DOUCET and DECUIR, JJ.
DOUCET, Judge.
This is an appeal from a conviction and sentence for armed robbery.
On September 23, 1991, the Dollar General Store in downtown Ferriday, Louisiana, was the scene of an armed robbery which took place at approximately 4:30 p.m. A black male wearing a blue shirt, blue pants and a bandana entered the store. He asked Marilyn Campbell, the cashier, where he could find a product called "Whirl of Curls." After she explained to him the location of the product, he went to its location and stayed there a few minutes only to return, telling her that he did not want a tube, he wanted a jar of "Whirl of Curls." Ms. Campbell testified that she told him it could be found in the same place as the tube of "Whirl of Curls" and proceeded to wait on another customer. When Ms. Campbell opened the register, she was pushed by the first man with such force that she flew backward from the area behind the cash register through the large plate glass window of the Dollar General Store. Ms. Campbell stated that she did not see him reach into the cash register. However, an audit of the cash register revealed a shortage of $85.00. Randy Mayberry and Gloria Banks, customers of the Dollar General Store and witnesses to the armed robbery, testified that the robber was armed. Randy Mayberry stated he saw the handle of a silver gun sticking out of the man's pants. Gloria Banks stated she saw a silver gun with a black handle in the waistband of the robber's pants.
On October 9, 1991, defendant, Darryl Miles, was charged by bill of information with the offense of armed robbery, a violation of La.R.S. 14:64. After defendant was formally arraigned, he pled not guilty. A trial was held on December 2, 1991.
Defendant was positively identified by both Randy Mayberry and Gloria Banks as the armed robber. Furthermore, Robert Bruce, a Crime Scene Technician for the Sheriff's Department, testified that a fingerprint taken from the jar of "Whirl of Curls" was definitely from defendant's thumb.
*1049 Defendant was found guilty as charged and sentencing was scheduled for December 18, 1991. At the sentencing hearing, defendant was arraigned as a habitual offender. The court found defendant to be a second offender under the Habitual Offender law and sentenced him for a period of 66 years without benefit of parole, probation or suspension of sentence. Defendant appeals alleging four assignments of error.

ERRORS PATENT
A review of the record of defendant's multiple offender proceeding for patent error fails to reflect whether defendant was advised of his right to remain silent at his arraignment on the multiple bill. La. R.S. 15:529.1(D); State v. Gilbert, 520 So.2d 1184 (La.App. 5 Cir.1988). However, the defendant did, in fact, exercise this right and did not testify. Therefore, he has suffered no adverse effects to his substantial rights sufficient to warrant reversal. La.C.Cr.P. art. 921; State v. McDonald, 562 So.2d 25 (La.App. 5 Cir.1990).

TIME FOR INVESTIGATION OF NEW EVIDENCE
Defendant alleges that the trial judge erred in failing to grant him adequate time to investigate newly discovered evidence. After jury selection in the evening hours of December 2, 1991, defendant allegedly received a letter from an unknown person claiming to be the grandparent of the guilty party. The letter did not identify the grandparent nor did it reveal the grandson's identity. Defendant Miles claimed he received the letter from a jailer named Curley White who hand delivered it to his cell. Mr. White denied having delivered any such letter to the defendant.
At the opening of court, on December 3, 1991, defense counsel asserted that the postscript on the letter, "I know you're not guilty. I was in court with you today." pointed to one of the prospective jurors as the grandparent of the guilty party. The trial judge stated that he wanted additional evidence before the proceedings would be stopped. He allowed defendant to make a record consisting of several witnesses' testimonies on the limited issue of the origin of the letter. After all testimony was received, the author of the letter and its origin remained unknown. Subsequently, trial proceeded.
In defendant's enumerated assignments of error, it was alleged that there was error in the trial court because defendant's motion for a continuance had not been granted. However, the oral motion for a recess, made during the trial, was the correct motion according to La. C.Cr.P. art. 708 as set forth below:
A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced.
Defense counsel's motion occurred at the opening of court on the second day of trial. Therefore, the correct motion to be made was a motion for a recess of the trial. A motion for recess is evaluated by the same standards as a motion for a continuance. State v. White, 389 So.2d 1300 (La.1980). A granting of a recess, like that of a continuance, is a matter within the sound discretion of the trial court and will not be reversed in the absence of a showing of an abuse of discretion. State v. Telford, 384 So.2d 347 (La.1980).
There has been no showing of an abuse of discretion in denying defendant's motion for a recess. The trial court allowed defense counsel to question a multitude of inmates who, according to the defendant, were witnesses to the delivery of the letter. None of these witnesses corroborated defendant's story. The trial judge, in denying defendant's motion, stated that he did not believe the letter, that it was "twilight zone kind of stuff" and that the jailer, Curley White, had no reason to lie. Although the trial judge did not accuse defendant or his fiancee' of writing the anonymous letter, he stated that he was going to order the grand jury to investigate on the theory of obstruction of justice. The judge remarked that he was aware of *1050 the remarkable similarities in handwriting and sentence structure between the anonymous letter and a poem written by either the defendant or his fiancee' which was found in defendant's cell. The lack of any evidence concerning the true author of the letter and the suspicious circumstances under which defendant received the letter on the eve of trial factored into the judge's decision to deny the motion. After a careful review of the record we find no abuse of discretion by the trial court in denying the motion for recess.

BATSON OBJECTION
Defendant alleges that the trial court erred in allowing the state to systematically exclude minorities, particularly blacks, from the jury venire. Further, defendant claims that the state improperly excused these black veniremen without given a sufficient racially neutral explanation as required by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). According to La.C.Cr.P. art. 841, an irregularity or error at trial cannot be availed of after verdict unless the party makes known his objection and the grounds for it. State v. Gordy, 380 So.2d 1347 (La.1980). Therefore, we must first determine whether defendant raised his Batson objection timely.
In Batson, supra, the court found that in order to preserve the complaint that the prosecutor made a challenge based on race, the defense must make an objection before the entire jury panel is sworn. In 1988, the Louisiana Supreme Court in State v. Williams, 524 So.2d 746 (La.1988) determined that the language in Batson, supra, suggests that the "ruling on the objection must be made at some time before the completion of the jury panel." In State v. Lamark, 584 So.2d 686 (La.App. 1 Cir. 1991), the court stated that "for a Batson objection to be timely it must be entered before the regular panel members of the jury are sworn ..." Lamark, at 695.
Art. 790 was amended in 1990 to read as follows:
When selection of jurors and alternate jurors has been completed, and all issues properly raised under Article 795 have been resolved, the jurors shall then be sworn together to try the case in a just and impartial manner, each to the best of his judgment, and to render a verdict according to the law and the evidence.
Our review of the record reveals no Batson objection was made during any stage of the trial. If the defendant does not make an objection at trial he cannot complain for the first time on appeal of a denial of his equal protection rights in the jury selection process. State v. Evans, 506 So.2d 1283 (La.App. 2 Cir.1987).

SUFFICIENCY OF THE EVIDENCE
Defendant next contends that the evidence presented was not sufficient to support the conviction of armed robbery. Defendant alleges that he possessed information that another person committed the offense. Defendant further argues that the description given by the victim and witnesses does not clearly identify him. Defendant points out that the witnesses described the robber as a tall black man wearing a blue shirt, blue pants and a black and blue bandana. When arrested defendant was wearing white clothes. Moreover, defendant alleges that the description of a "tall" black man does not adequately describe him because he is only 5'10" tall. Defendant further alleges that the state failed to prove beyond a reasonable doubt that the robbery was committed by someone armed with a dangerous weapon. Finally, defendant alleges that an alibi was proven through the testimony of two neutral parties, Willie Hollis and Jerome Harris, who allegedly indicated that the defendant was with them at the time the robbery took place.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. *1051 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In the present case, defendant was found guilty of armed robbery, a violation of La. R.S. 14:64. Armed robbery is defined by La.R.S. 14:64(A) as follows:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Two witnesses positively identified Darryl Miles as the perpetrator of the robbery. Both witnesses testified that they saw a gun although Miles did not draw it. Testimony revealed that defendant grabbed approximately $85.00 out of the cash register and pushed a store clerk through the window, thereby satisfying all the elements of the armed robbery statute. La.R.S. 14:64. As a result, the state has adequately proven all of the elements of the crime of armed robbery beyond a reasonable doubt.

EXCESSIVE SENTENCE
Defendant contends that the sentence given by the trial court was excessive and that the court did not follow the guidelines of La.C.Cr.P. art. 894.1.
Article 1, § 20 of the Louisiana Constitution of 1974, prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3rd Cir.1988). To constitute an excessive sentence, this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir. 1988), writ denied, 536 So.2d 1233 (La. 1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
The Legislature has provided criteria to aid a sentencing court in determining whether a sentence of imprisonment should be imposed and whether suspension of a sentence or probation is warranted. La. C.Cr.P. art. 894.1; State v. Klause, 525 So.2d 1076 (La.App. 3 Cir.1988). Paragraph (c) of article 894.1 requires the court to state for the record the considerations taken into account and the factual basis used when imposing a sentence. The trial court need not refer to every aggravating and mitigating circumstance in order to comply with the article. However, the record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the defendant's sentence. State v. Smith, 433 So.2d 688 (La.1983).
If there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every circumstance listed in article 894.1 will not necessitate a remand for resentencing. State v. Cottingin, 476 So.2d 1184 (La.App. 3 Cir.1985), appeal after remand, 496 So.2d 1379 (La.App. 3 Cir.1986) State v. Morgan, 428 So.2d 1215 (La.App. 3 Cir.), writ denied, 433 So.2d 166 (La.1983).
As stated in Cottingin, supra, at p. 1186:
There are two underlying purposes of the codal requirement that the sentencing court articulate the specific reasons *1052 based on particular facts and considerations for imposing a sentence. First, it ensures that the sentence is particularized to the defendant. State v. Murdock, 416 So.2d 103 (La.1982). In addition, it aids the reviewing court in the determination of whether the sentence imposed is excessive by providing an actual indication of whether the sentencing court adequately considered the statutory guidelines.
(citations omitted)
On December 18, 1991, the trial court found defendant a second offender under the habitual offender law. Under the habitual offender law, the sentencing range for a second felony that is punishable by imprisonment for any term less than his natural life, "shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." La. R.S. 15:529.1. The statutory sentencing range for armed robbery is imprisonment at hard labor for not less than five years and not more than 99 years without benefit of parole, probation or suspension of sentence. The 66 year sentence is clearly within the boundaries set forth in La.R.S. 15:529.1.
However, defendant contends this sentence is excessive under the circumstances even though it is within the statutory limits. Defendant contends that no weapon was used during the commission of the offense, no threats were made, and although the victim was pushed through the plate glass window she was not seriously injured and the facts of the case suggest that the defendant merely wanted to "move her from the cash register." Furthermore, defendant argues that the provisions of La.C.Cr.P. art. 894.1 were not "strictly followed" in pronouncing sentence.
During defendant's sentencing hearing the trial judge did not specifically state that he was giving consideration to the sentencing guidelines set forth in La. C.Cr.P. art. 894.1. However, a sentencing guideline checklist was contemporaneously filed on December 18, 1991, the day of the sentencing hearing. During the sentencing hearing the trial judge stated that he thought there was an undue risk that defendant Miles would commit another crime and that defendant was in need of correctional treatment or a custodial environment because the judge doubted he could live viably in any other environment. The trial judge stated that any lesser sentence would deprecate the seriousness of the crime and that in light of the PSI and defendant's criminal history it was evident that the defendant preys on the weak and defenseless. An analysis of the presentence investigation report reveals that defendant was previously arrested on a charge of simple burglary. Subsequently defendant pled guilty to an amended charge of felony theft. Thereafter, defendant was arrested on charges of crimes against nature, committed while incarcerated on the simple burglary charge. Finally, the trial judge noted that probation was not an option and imprisonment would not be an excessive hardship to the defendant or his dependents.
A sentencing court is given wide discretion in the imposition of sentence within statutory limits and a sentence should not be set aside as excessive in the absence of manifest abuse of the sentencing court's discretion. State v. Jones, 546 So.2d 1343 (La.App. 3 Cir.1989). We find no abuse of discretion in the sentencing of the defendant. There is adequate evidence in the record to demonstrate that the trial judge considered the sentencing guidelines set forth in La.C.Cr.P. art. 894.1
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.